W. A. Knight *Ex parte.*

the finding of the Circuit Judge was warranted by the evidence.

There is no error in the judgment, and it will be affirmed.

3L 401
16L 248
16L 412
16L 692
4pi 1

IN THE MATTER OF W. A. KNIGHT *Ex parte.*

1. APPEAL. *Will not lie from action of Circuit Judge requiring County Trustee to give new bond or vacating the office. Not a judicial proceeding.* The action of a circuit judge, under sec. 778 of the Code, based upon the report of a grand jury, requiring a county trustee to give new bond, and declaring his office vacant because, in the opinion of the judge, the sureties to the bond, tendered in compliance with the order, are not good for the amount, is not a judicial proceeding from which an appeal or writ of error lies directly to the Supreme Court.

2. VOID PROCEEDINGS. *Remedy by certiorari. Dicta* per McFarland, J. If the proceeding be such a departure from the provisions of the statute as to render it void, the remedy is by *certiorari* from the circuit court; but if the proceeding is merely erroneous, there is no remedy.

FROM DAVIDSON.

Writ of error to the Circuit Court of Davidson county. FRANK T. REID, J.

W. A. THOMA, GEO. MANEY, JOHN FRIZZELL, E. H. EAST and W. A. GLENN for Knight.

ATTORNEY-GENERAL LEA for the State.
26—VOL. 3.

MALONE & DEMOSS for the county.

MCFARLAND, J., delivered the opinion of the court.

On the 18th of June, 1879, W. H. Washington, District Attorney-General, presented to the Hon. Frank T. Ried, Judge of the 8th Judicial Circuit, then holding the Circuit Court at Nashville, the report of the Grand Jury of Davidson county in regard to the bonds of the county officers, and also produced the bonds of W. A. Knight, Trustee, and moved that said Knight be required to give other bonds, or that his office be declared vacant. An order was at once made and entered upon the minutes of the court for a subpœna to issue summoning said Knight to appear before the judge at 10 o'clock A. M., June 19, "then and there to enter into bond and surety according to law, or show cause why his office should not be declared vacant."

On the day named (the 19th) Judge Reid was sick, but on the 20th said Knight appeared, and the motion was heard and a further order was made and entered upon the minutes of the court in which it is recited "that it appearing to the court that the four bonds purporting to have been made by W. A. Knight on the 1st day of March, 1879, from examination and inspection, and from the report of the grand jury (the said bonds having been filed before the court for examination and inspection according to law), and said report of the grand jury having been brought before the court by the Attorney-General, that they are irregular, have not been taken according to law, and

are insufficient in amount," it is ordered that said Knight be granted until July the 1st to give new and additional bonds, and if he fail to appear before the judge at the court house on or before that day and execute the required bonds, the office to be declared vacant.    The amounts of the several bonds were specified in the order.    It was ordered that Knight have notice of the order above set forth, and a copy thereof was issued and served upon him the same day.

On the 28th of June Knight appeared in court and presented his bill of exceptions to the action taken upon the 20th, in which the proceedings had upon that day are set forth, and the report of the grand jury made a part thereof, and it is further shown that Knight made a general objection to the reading of said report, but his objection was overruled.    He then moved the court to be permitted to justify the sufficiency of the existing bonds, but the motion was overruled.    The bill of exceptions was signed.

On the 1st day of July (the day named for Knight to give additional bonds) he appeared and tendered the four several bonds required by law, signed by himself and a number of sureties.    At the same time the affidavits or depositions of Knight and his sureties as to their solvency were presented, and the judge, of his own motion, took the affidavits of several real estate agents as to the value of certain real estate owned by the sureties.    To the consideration of the latter Knight excepted upon the ground that no notice or opportunity to cross-examine was given him, but the objection was overruled.

These proceedings seem to have occupied the time until the next day (the 2d of July), when the matter was taken under advisement. On the 5th the judge delivered a written opinion, in which he held that the sureties on the bonds tendered were insufficient, and declared the office vacant, and ordered that the county court be notified of his action. At the same time he made an order correcting all former orders so as to insert the name of "Hon. Frank T. Ried" in the place of the words "the court," wherever these words were used, so as to show that the proceedings were had not before the circuit court, but before Judge Reid in person. On the 7th of July Knight appeared before Reid and asked leave to make a motion in the matter, and thereupon moved to be allowed until July the 10th in which to give other sureties and complete the sufficiency of his bonds, but the motion was refused. On the 8th of July he again appeared and presented the affidavits of certain persons who proposed to go upon the bonds, together with his petition, asking to add their names so as to make the bonds good, but Judge Reid, being of opinion he had no power to receive the application, denied the motion. Knight then presented his bill of exceptions, which was signed as a correct, or as it elsewhere expressed, a "pretty correct history of what took place," the judge being of opinion, however, that it was not a case for a bill of exceptions. Knight then prayed an appeal to this court, which was refused. He then moved to have the whole proceeding reformed and annulled, which was also refused.. There-

upon Knight presented his petition, accompanied by a transcript of the foregoing proceedings, to one of the judges of this court, praying for a mandamus to compel Judge Reid to accept the bonds tendered, or in the alternative, for writs of error and *supersedeas.* The latter writs were granted (the judge to whom the application was made being of opinion that the questions presented were worthy of consideration by a full court), and the enforcement of the order of Judge Ried has been superseded. A motion has been made to discharge the writs as improperly granted, and the cause, upon its merits, has been advanced and heard at the same time.

The errors assigned in the petition and in argument are numerous. The act of 1879, ch. 9, extends the time previously allowed tax payers to make voluntary payment, and upon the supposition that this extension might release the sureties of the trustees, such being the purport of the case of *Johnson* v. *Hacker,* 8 Heis., —, it is provided that unless the sureties appear and acknowledge their willingness to continue bound, a new bond shall be given on or before the first Monday of March, 1879, and in default of this the office should be declared vacant.

The bonds which Judge Reid in his first order declared insufficient were those given by Knight in compliance with this act (though the report of the grand jury, as we understand it, was not confined to these bonds). The first error assigned is, that the above act of 1879 is unconstitutional; 2d, that the judge erred in receiving and acting upon the report

of the grand jury because it was addressed to Judge Quarles, of the criminal court; 3d, in refusing to permit Knight to show that his bonds were sufficient, notwithstanding the report of the grand jury; 4th, that by the law Knight had ten days from the first day of July (the day on which he was ordered to give the bond) in which to complete them; 5th, that the judge erred in considering the *ex parte* affidavits of the real estate agents as to the solvency of the sureties offered, and in determining the sureties insufficient; that the whole proceeding was a departure from the law, and void; that neither the circuit court or circuit judge had any jurisdiction of the matter. On the other hand, it is argued that this court has no jurisdiction by appeal, writ of error, or otherwise, to review the proceedings before Judge Reid, and consequently no power to supersede his orders. The solution of this latter question depends upon the nature and character of the proceedings to be reviewed. If the proceeding was a judicial one before the circuit court of Davidson county in the ordinary mode in which actions at law are conducted, then it is not denied that an appeal or writ of error would lie to this court for the correction of errors. If, on the other hand, Judge Reid acted only as the ministerial officer or agent of the State, then it is contended that this court has no revisory power over his action; or even if it be conceded that the proceeding was of a judicial nature, yet it is contended that it was a proceeding not before the circuit court as such, but before Judge Reid as a special statutory tribunal, con-

stituted for the purpose of determining matters of this
character, and his decision was intended to be final.
The duty of taking bonds from collectors of the pub-
lic revenue is, by law, in the first instance, devolved
upon the county court, and such officers are required
to enter in the several bonds required by law with
sureties satisfactory to that tribunal.    Code, secs. 492–
599.    By the act of 1875, ch. 91, the office of rev-
enue collector is abolished, and the duty of these
officers devolved upon the county trustees, to be per-
formed in a manner therein pointed out, and the trus-
tees are required to enter into the bonds previously
required of the tax collectors.    By secs. 725–727 of
the Code it is made the duty of the clerk of the
county court to produce before the judge of the cir-
cuit court at the first term after the bonds are exe-
cuted, the bonds of all officers taken in that year, and
it is made the duty of the circuit judge to examine
them, and if, in his opinion, they have been taken
according to law, he shall write upon them, "exam-
ined and approved," and sign his name thereto.    If
the judge be of opinion that the bonds have not been
taken according to law, a subpœna is to issue for the
officer to appear before the judge immediately and en-
ter into bond and security, and if he fail to do so
the office is to be declared vacant, and another elec-
tion held in twenty days.

By sec. 5079 of the Code it is made the special
duty of the grand jury to inquire into the condition
of the bonds of all county officers with regard to their
correctness and sufficiency; and by sec. 778 *et seq.*, it

is provided that all public officers who are compelled
to give official bonds may be required by the court
or officer whose duty it is to take or approve such
bonds, to give additional security or new bonds," in
certain cases among others, "where the grand jury or
a majority thereof certify the insufficiency of the origi-
nal bond." It has been argued that this last named
section was intended to give the power to require new
bonds to the county courts, and not to the circuit
judge, but it was held to apply to the circuit judge
in the case of *ex parte Wickersham*, 6 Col., 333, and
as we have seen that by sec. 725, *et seq.*, the circuit
judge is the officer required to approve such bonds.
The construction given in the Wickersham case is
within the letter of sec. 778.

Judge Reid proceeded to act in the present case
under the provisions of said last named section, upon
the report of the grand jury, and the question is, was
the proceeding a judicial one before the circuit court
according to the course of the common law? The
fact that the motion was made before Judge Reid
while sitting in open court, and that his orders were
entered upon the minutes of the court, is to my mind
not material. If the power conferred upon him was
ministerial in its nature he could not make it judicial
by the manner of its performance, nor could he in
any wise change the nature of his powers or his acts
with respect to their force and effect by discharging
the duty in open court, or entering upon the minutes
of the court the orders made by him. The powers
conferred upon the circuit judge by the sections of the

Code referred to are similar in their nature to the powers exercised by the county court in taking the bonds in the first instance. He must determine the proper legal form and terms of the bonds and the sufficiency of the sureties. He is the agent or officer of the State with whom the trustee and his sureties enter into their obligations. He accepts the bonds upon behalf of the State, or refuses to accept them if not satisfactory, in which event the law declares the office vacant.

To my mind it is not very material whether the sections of the Code in question be regarded as conferring the power upon the circuit judge or upon the circuit court. The nature of the power does not depend upon this. We have seen the duty of taking the bonds in the first instance is conferred upon the county court in terms. This does not change the nature of the duty or the effect of the act when performed. If it were conceded that sec. 778 confers the power upon the circuit court instead of the judge, it by no means follows that the act, when performed, becomes a judicial proceeding subject to review in this court, as powers merely ministerial, or at least not judicial, may be conferred upon the circuit court. See *Ex parte Gray,* 9 Hum., 513; 8 Hum., 634; *Carey* v. *Justices,* 5 Sneed, 515; 3 Baxter, 362. But it seems manifest to my mind that it was intended to confer the power upon the circuit judge, not upon the court.

Secs. 779, *et seq.,* point out the mode of the proceeding. The requisition to give the additional bond

is to be in writing, and is to specify the time and place when the officer shall appear and give the bond. If a proceeding in the circuit court were contemplated it could not take place elsewhere than at the court house, nor at any other time than during a term of court. Nor is any mode of proceeding pointed out making it analogous to a judicial proceeding according to the course of the common law. But aside from this the very nature of the proceeding precludes the idea of its being reviewed for the correction of errors as judicial proceedings are reviewed.

It can hardly be contended that an appeal would lie from the refusal of the county court to accept the bonds in the first instance, either because in the opinion of that tribunal the bonds were not in proper form, or because the sureties were insufficient, and that such appeal would take the course of other judicial proceedings. If so, the entire term of the office might be occupied in a litigation over the question of the form of the bond or the solvency of the sureties. If the taking the bonds of a public officer is to assume the shape of an ordinary suit at law, then endless delay and confusion would result. There would be no one in a position to rightfully exercise the functions of the office, the revenue would remain uncollected, and the public suffer irreparable injury. Again, after the bonds are accepted by the county court, as we have seen, it is made the duty of the clerk of the county court to produce them before the circuit judge at the first term of the court held in the county after the bonds are taken, and it is made the duty of the

judge to examine them, and if, in his opinion, they have been taken according to law, he shall write upon them, "examined and approved," and sign his name thereto. But if not taken according to law, a sub-poena is to issue instanter requiring the officer to appear before the judge immediately and enter into bond and security according to law, and if the officer fail or refuse to do so, the judge is to declare the office vacant, and another election is to be held in twenty days, and the bonds of the new officer to be thus elected are subject to the same proceedings. See secs. 725, *et seq.*

Now, it seems to me clear that the action of a circuit judge, under these sections of the Code, cannot be a subject of review upon appeal. The bonds are to be presented to him, it is true, on the second day of the first term of the circuit court, because, as may be fairly inferred, this is the time the judge is certain to be found in the county, and probably the first time, as but few of the counties have a circuit judge residing within their limits. The circuit judge is selected to discharge this duty because of his legal knowledge, but although the duty is to be performed on the second day of the term, yet there is no requirement that the act is to be performed in open court, the officer is to have no notice of the proceeding in the first instance, and the records of the circuit court are not required to show any of the proceedings, in fact any entry upon the records of the court would be wholly superfluous and nugatory. If the judge finds the bonds to have been legally taken, he

is to write upon them, "examined and approved," and sign his name thereto. Otherwise, he is to take new bonds or declare the office vacant. I am unable to see in this proceeding anything analogous to a suit at law, and I do not think the officer would have the right to appeal from the refusal of the circuit judge to write "examined and approved" upon the bonds and sign his name thereto. This duty is left to the judge, and his action was intended to be final—no one else is authorized to perform it. And in the event the judge refused to approve the bonds, and new bonds are offered and refused because, in the opinion of the judge, the sureties are insufficient, I do not think the officer could appeal and review the decision of the judge upon this question of fact as other strictly judicial proceedings are reviewed. I do not perceive any difference in principle between an attempt to review the action of the county court in refusing the bonds in the first instance, or the action of the circuit judge in refusing to approve the bonds or accept new bonds under the secs. 725 *et seq.* above considered, and an attempt to review the action of the circuit judge acting upon the report of the grand jury under sec. 778 *et seq.* as the functions exercised by the county court and the circuit judge in each instance are in their nature similar. Without refering at length to authorities, the case of *Wade* v. *Murray*, 2 Sneed, 50, furnishes strong authority for this conclusion. That was a contest over an election for District Attorney-General, which the law provided should be heard and determined by the Chancellor of the di-

vision.    In that instance the case was heard and de-
termined by a special chancellor appointed by the Gov-
ernor upon the certificate of the regular chancellor of
his physical disability.    An appeal in error was prayed
and granted to this court upon assumed error of law.
It will be seen that the case was a much stronger
one for the exercise of revisory power than the pres-
ent, as the action of the chancellor certainly partook
of a judicial character.    This court, however, dismissed
the writ of error upon the ground that the power to
decide the contest was not conferred upon the chan-
cery court but upon the chancellor as a special statu-
tory tribunal, and no provision having been made for
an appeal or writ of error, his determination of the
matter was intended to be final.    I understand the
court to have been unanimous upon the question that
no writ of error would lie from the decision of the
chancellor to this court.    In that case Murray had
also applied to the circuit court for a *certiorari* to
bring up the proceedings had before the special chan-
cellor, which was refused, and from the refusal of the
circuit court to grant the *certiorari*, an appeal in error
was also prayed and granted, and this was also heard
at the same time.    The court was of opinion that
for some purposes the *certiorari* was a proper remedy
in such a case.    Judge McKinney (with whom Judge
Caruthers concurred), holding that it would have been
a proper remedy if there had been such a substantial
departure from the course of proceeding pointed out
by the statute as to render the proceeding void, but
that it would not lie merely to correct errors, while

upon this last point Judge Totten dissented, holding that the *certiorari* might be resorted to for the correction of mere errors in the proceeding, but I do not understand that he dissented from the proposition that a writ of error did not lie directly to this court from the decision of the special chancellor. See also the reasoning of Judge McKinney in *Cooper* v. *Summers*, 1 Sneed, 456, and Judge Cooper in *Ex parte Chadwell*, 1 Tenn. Ch. R., afterward approved by the court.

It is argued that this line of decisions may allow an officer duly elected and inducted into office to be summarily expelled without the hearing that the law guarantees to other citizens in respect to their property rights, and it is supposed that there is a distinction between the case of an officer who has been once inducted into office, and one who has merely the right to be inducted. I do not think that in this respect any distinction exists. That the officer has a property in the office is not questioned, but his right cannot be exercised except upon complying with the correlative duty of securing the public against loss of the public revenue.

All the above provisions of our statute are parts of the same system, and must be construed and enforced as a whole. The acceptance of the bonds by the county court, and the induction into office, are subject to the approval of the bonds by the circuit judge under sec. 725, and the action of the grand jury and judge under sec. 778. Otherwise, if the officer be inducted into office upon an insufficient bond,

or one that afterward becomes so, all attempts to enforce the provisions of the statutes we are considering so as to compel the giving of a new and sufficient bond, would often prove wholly nugatory. If the proceeding be regarded as a judicial one, it would be an easy matter for the officer to delay its determination until his term expires, and thus baffle all efforts to compel him to give the required security. The right of the public to security is at least equal to the right of the officer to his office, and the remedies for compelling the officer to give the proper bonds must necessarily be summary, otherwise they are utterly ineffectual. To allow these questions to be settled by the ordinary course of judicial proceedings would be subversive of the public interest. This is well illustrated by the present case. Suppose we take jurisdiction of the case and review the action of Judge Reid. We might be of opinion that he erred in admitting testimony, or in rejecting sureties offered. If for these errors we should reverse and remand the cause for further proceedings, it would be subject to all the delays incident to an ordinary trial to another review in this court. In the meantime there would be no one properly authorized or under proper bonds to collect the public revenue. The interest of the State requires that some one should be in a condition to perform this public service, and under proper bonds. For the want of it the public interests suffer—the government itself might suffer irreparable injury.

But it is asked if we are to ignore the rights of the officer. The decision against him may be arbi-

trary and unjust, he may, in fact have tendered a good bond. The question, however is, who is to decide this? There must be a tribunal whose decision of the matter is final. Is there anything in the Constitution or law imperatively demanding that this question be decided by the Supreme Court? If the law of the land has constituted some other tribunal the sole judge of this question and provided for no appeal, is it not final? When the question is decided by the tribunal whose decision the law makes final, it is as much a determination of the right according to the law of the land, in the sense of the Constitution, as if made by this court, whether this court would have decided the question the same way or not. The lawmakers no doubt properly assumed that the tribunal appointed to perform this function was as likely to decide properly as any other, and it would be very seldom that any injustice would be done an officer in refusing good bonds. But if by possibility this should be done it is better that the one individual should submit to the wrong than that still greater evils should accrue to the public by an attempt to correct the errors.

If, however, an attempt should be made to remove an officer without authority or color of law, that is, if the judge so far depart from the mode pointed out by the statute as to render his action void, then, according to the case of *Wade* v. *Murray,* 2 Sneed, —, the remedy would be by *certiorari* to quash the proceeding in the circuit court, that court having this jurisdiction. by virtue of its general re-

visory powers, over inferior tribunals. That the cir-cuit court. might be held by the same judge whose proceeding is to be acted upon, though anomalous, would not be a fatal objection.

Again, I should be of opinion that if the court or officer whose duty it is to take the bonds should refuse to act at all, that is, arbitrarily refuse to take any action, the remedy by mandamus would probably lie. If, however, such tribunal should act and deter--mine the bonds insufficient, then a superior court could not compel the acceptance of the bond upon the ground that in its opinion the bonds were sufficient. It is. possible that for a malicious refusal of a ministerial officer to accept proper bonds, an action at law might be maintained, but as to this it is unnecessary to express any definite opinion. I conclude, therefore, that the writ of error was not properly prosecuted in this. case, and therefore express no opinion as to whether or not there were errors in the proceeding, further than to say that if this were regarded as a judicial proceeding, I should be inclined to agree with Judge Turney in holding that it was error to admit *ex parte* testimony, and deny to Knight the right to cross-examine the witnesses; but not regarding it as a judicial proceeding, it is not necessary to consider these questions further I think, however, the action of Judge Reid was not void. Knight was, in my opinion allowed the ten days prescribed by the statute in which to give the bonds, that is, ten days after the peremptory order was made upon him of which he had immediate notice.

27—VOL. 3.

W. A. Knight *Ex parte.*

I am of opinion that the writ of error should be dismissed and the *supersedeas* discharged.

TURNEY, J., delivered the following dissenting opinion:

On the 18th of June, 1879, W. H. Washington, Attorney General, moved in the Circuit Court of Davidson county, that the office of trustee for that county be declared vacant, and produced to the court the bonds of W. A. Knight, trustee, and a paper claimed to be the report of the grand jury that the bonds were irregular, informal and insufficient. A subpœna instanter was issued for Knight to appear before the Judge of the Circuit Court at 10 o'clock, A. M., June 19th. The subpœna is not in the transcript, but is shown to have been issued in pursuance of an order of record of the Circuit Court. Subpœna could have performed no office in this proceeding: 1. Because there is nothing in the law to authorize its issuance. 2. It was issued by the clerk and not signed by the Judge, as the law requires. 3. If it could at any time have been treated as the requisition, the order made on the 20th of June, and the service of a copy of the order, signed by the Judge, on Knight to appear in obedience to it, was an abandonment of the subpœna instanter, which is no further taken notice of; the proceeding in the matter is entirely upon the requisition of 20th June, and as will be seen hereafter, the opinion of the Circuit Judge treats the requisition of 20th June as the basis of his action.

On the 19th the Judge was sick. On the 20th Knight appeared. It was ordered "that Knight be granted until the first day of July to give new and additional bonds before the Judge of the Circuit Court of Davidson county, and if he fail to do so on or before the first day of July, his said office will be declared vacant, and it is further ordered that said Knight be notified of this entry." A copy of the entry was served upon Knight.

On the 5th July, the Circuit Judge delivered an opinion declaring the office of trustee vacant.

On the trial of the motion the Attorney General read, over the objection of Knight, what purported to be a report of the grand jury, addressed to " Hon. James M. Quarles, Judge of the counties of Davidson and Rutherford," and embracing the offices of Sheriff, Chancery Court Clerk, Criminal Court Clerk, Judge of the County Court, etc.

Knight moved to be permitted to justify the sufficiency of the existing or original bonds—the motion was disallowed. To this action he tendered a bill of exceptions, which was signed on the 1st of July, the day fixed by the order of the court and requisition. Knight appeared and presented additional bonds; this tender of bonds was intended as a compliance with the act of 29th January, 1879.

His Honor, the Circuit Judge, in his opinion giving reasons for his refusal of the bonds, says: " There is not good and sufficient security provided for more than $205,132.50, or $37,867.50 less than the amount required by law to be secured; and when an exam-

ination is made of the sureties on which it is claimed that $205,132.50 is secured, it is clearly to be seen that the amount dwindles down to $150,000 or $175,000, if not even to a less figure."

On the 7th of July, Knight moved the court to change or modify his order declaring the office vacant, and allow him until the 10th of July to increase the security and complete the sufficiency of his bonds. This was refused, and Knight excepted.

On July 8th, Knight presented his petition, with affidavits of Ament, Ensley, Sax and O'Connor, and asked to add additional security to that already given, of $103,000 to his bonds—this was refused.

On the trial, the affidavits or some statements of third persons were read as to the value of property owned by the proffered securities. Knight objected, because he had no notice of the taking, and no opportunity to cross-examine. His objection was overruled.

The proceeding is based upon sections 778, 779 and 780 of the Code, as follows: "All other public officers who are compelled to give official bonds *may* be required by the court or officer whose duty it is to take or approve such bonds, to give additional security or new bonds in the following cases: 3. When the grand jury of the county or a majority certify the insufficiency of the original bond." 779. "The requisition to give additional bonds shall in all cases be in writing and signed by the officer making it, shall state the day and place when and where the officer cited shall appear and give such bond, and a copy

thereof shall be personally served on such officer before the day specified therein." 780. "Such officer shall give the additional bond within ten days after the day specified in the requisition, and failing so to do he vacates his office, and the officer making the requisition shall at once certify the fact to the appointing power, by whom the vacancy shall be filled."

The construction of these sections involves a consideration of sections 725, 726 and 727 of the Code, to which the sections above quoted are addenda, viz:

"Sec. 725. The clerk of every County Court shall produce to the Judge of the Circuit Court for his examination, at the first Circuit Court in his county, on the 2d day of the term after the first Monday in April of each year, the bonds of all officers taken in said year by the County Court."

"Sec. 726. If, upon examination, said bonds shall in the opinion of the Judge have been taken according to law, he shall write upon them 'examined and approved,' and sign his name thereto. But if any of said bonds shall not have been taken agreeably to law, the clerk of said Circuit Court shall issue a subpœna instanter for such officer to appear before said Judge immediately with surety according to law."

"Sec. 727. If, upon service and return of said subpœna, the officer shall fail or refuse to appear and enter into bond with surety, the Judge shall declare the office vacant, and another election shall be held within twenty days thereafter."

The Circuit Judge denied an appeal, and the case is before us by writ of error and *supersedeas*.

For the State and county it is insisted this court has no jurisdiction to revise the action of the Circuit Judge—that being, it is argued, merely ministerial and not judicial.

The motion to vacate the office of trustee is a proceeding against the incumbent in that office, in which, as in other proceedings, he has the right to be heard.

The questions in the case are, first, are the bonds executed in the County Court sufficient? If this is answered in the negative, then are the bonds offered. in addition to the original, sufficient with the original, to answer the requirements of the law? These ques-- tions necessarily demand investigation of law and fact. 1. Do the bonds in form and undertaking bind the parties thereto for liability for the official default of the principal? 2. Are the parties to such bonds of sufficient solvency to meet any default or neglect of the principal?

In these investigations, it cannot be denied to the officer that he has a right to be heard by himself and counsel. The hearing must be had in conformity to rules of law and evidence. The officer has the unquestionable right to confine the investigation to legal, competent and full proof, and the court or officer trying the matter has no right to depart from well-established rules of law. In *Wade* v. *Murray,* Judge Totten, in a dissenting opinion, says: "The person legally entitled to the office by a valid election, has a property in it." Knight had not only been legally elected to the office of trustee by a valid election, but had actually been inducted into it, and was in the

actual exercise and discharge of its duties. The principle announced by Judge Totten, of property in an office, is a well settled and universally recognized rule of law.

By section 8, of article 1, of our bill of rights, it is ordained: "That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

This ordinance is certainly broad enough to cover whatever of interest the person elected to and installed into an office may have in the office, even though a property interest were denied.

In *Jones' heirs* v. *Perry*, 10 Yer., 59, Judge Green says: "The term 'law of the land,' in the Constitution of Tennessee, means a general and public law operating equally upon every member of the community."

Judge Cooley, in his Constitutional Limitations, page 353, says: "Perhaps no definition is more often quoted than that given by Mr. Webster in the Dartmouth College case. By the law of the land, is most clearly intended the general law—a law which hears before it condemns; which proceeds upon *inquiry*, and renders judgment only *after trial*. The meaning is, that every citizen shall hold his life, liberty, *property* and immunities under the protection of the *general rules* which govern society. Everything which passes under the form of an enactment is not, therefore, to be considered the law of the land."

Judge Cooly adds: "The definition here given is apt and suitable as applied to judicial proceeding, which cannot be valid unless they proceed upon inquiry and render judgment only after trial." It is entirely correct also in assuming that a legislative enactment is not necessarily the law of the land. The words "the law of the land," as used in the Constitution, do not mean a statute passed for the purpose of working wrong. That construction would render the Constitution absolutely nugatory, and turn this part of the Constitution into mere nonsense. The people would be made to say to the two houses, "You shall be vested with the legislative power of the State, but no one shall be disfranchised or deprived of any of the rights or privileges of a citizen, unless you pass a statute for that purpose. In other words, you shall not do the wrong unless you choose to do it."

Keeping this definition in mind, we ask, Has the law heard in this case before it condemned? Have the general rules which govern society been applied? Has the law proceeded upon inquiry, and rendered judgment only after trial? Is it the law of the land that testimony, the taking of which was *ex parte*, perhaps in secret, of which taking Knight had no notice, and the right of cross-examination actually denied him, may be read in evidence against him over his objection? Would such holding be a law that hears before it condemns—a law that proceeds upon inquiry, and renders judgment only after trial? Under such proceedings has Knight been deprived of his property by

"the law of the land?"    Is it the law of the land
that an unauthenticated paper, without the shadow of
proof as to verity—a paper containing the secret and
*ex parte* action of a grand jury and mainly based, as
shown upon its face, upon illegal and incompetent
testimony, and merely said to be the original record
of another court of record, may be read in evidence
against one, over his earnest objection?    Is it the law
of the land that the bonds of Knight should have
been held insufficient without proof; and that, too,
when he was asking to show their sufficiency by proof?
Is it the law of the land that a judge or court may
arbitrarily decide that additional bonds shall be given
to a fixed amount, without inquiry into the sufficiency
of the existing bonds, to see whether they are suffi-
cient or not; and if insufficient, to see to what extent
and amount additional bonds shall be required?    Is
it the law of the land that the Circuit Judge may,
by force of the statutes under which this proceeding
is had, totally ignore, without inquiry or examination,
the original bonds of Knight, and require him to
execute additional bonds for the full amount of the
penalty ?

All these things have been done here, and the
questions are distinctly and prominently made by the
record in this case, and involve rights that should not
be frittered away by construction.    It is said, how-
ever, that the circuit judge was only the ministerial
agent of the State and county, that his acts were not
judicial, and therefore not subject to revision by this
court.    To support this theory several Tennessee au-

thorities are relied upon. First, in the matter of
E. Wickersham, trustee, etc., 6 Col., 335. The trus
tee was regularly notified to appear as the statute di
rects. He did appear on the 27th of June, the day
*specified*, when he asked and obtained time till the
7th of July (ten days), when he failed to appear.
The court declared the office vacant, and certified to
the county commissioners. This was a strict and lit-
eral pursuance of the statute. He had been duly
summoned, the day distinctly *specified*, he appeared
and asked and obtained from the court the entire time
allowed him by law to execute bond, and then failed
to appear. Of course the statute having been pursued
by the court, and he wholly failing to appear on the
last day named by law, as he had himself appointed,
judgment by default was pronounced against him, and
this would be so in any cause. It was according to
the usual course of the court as prescribed by the
"law of the land."

In the case of *Thompson* v. *The Justices*, the sheriff
elect refused to produce vouchers that he had ac-
counted for and paid all State and county taxes that
before that time he was bound to account for and
pay, and the securities on his bond were deemed in-
sufficient, and having refused to justify, the justices
refused to induct Thompson into office. The action
of the justices strictly accorded with the requirements
of the law. They offered to do just what the law
demanded. Thompson defied it, and positively refused
to comply with any of its provisions. Not so with

Knight, he proposed to do all the law imposed upon, him to do.

The case of Gray, 9 Hum., 514, presents simply a question of police regulation, to be exercised by county courts in their discretion, permitting or refus-ing to permit free negroes to remain in the county.

In *Wade* v. *Murray,* 2 Sneed, 52, Judge McKinney holds that no relief could be granted, and says. that there is a special tribunal created for the trial of contested election cases, of which the person hold-ing the office of chancellor is constituted judge; that the tribunal was so constituted as to reasonably justify the presumption that its decisions would do equal and impartial justice according to the law of the land, and therefore ought to be satisfactory to the parties. "And no doubt the framers of the law thought it better that an erroneous decision upon the facts or law should be submitted to by a *single unsuccessful aspirant* than that the public should be subject to the great incon-venience and mischief of leaving the administration of justice suspended or impeded by a protracted litiga-tion in the different courts. For this reason we suppose the Legislature deemed it proper the summary de-cisions of the chancellor should be conclusive."

The case before us does not present a similar state of facts in any particular. That the court miscon-strued the intention of the Legislature in holding that it intended to make the summary proceeding before the chancellor conclusive, is made manifest by the act of the next Legislature giving the right of appeal to either party in such cases. The Wade and Murray

case was decided at the December term, 1854, and the act referred to passed in 1855. The case before us does not present a similar state of facts in any particular. The contested election was a proceeding to ascertain the vote and will of the people, and therefore political; the contest was between claimants over adverse claims to the right of property in the office. In this case the will of the people had been ascertained and settled by the proper authorities created by law for the purpose, and the relation of Knight to the proceeding is that of a defense of a right actually vested in him. A contested election has the effect of hindering for the time the organization of the State or county government; it produces a hitch in its machinery, and suspends the operation of its functions. Knight is not an unsuccessful aspirant, asking to contest the claim of his adversary to an election. He had, beyond question, the legal right to and possession of the office at the institution of the proceedings, and no one is controverting that right and legal possession. In his case the public is in no danger of being subjected to the great inconvenience and mischief of having the administration of justice suspended or impeded by protracted litigations, for the reason that being already inducted into the office he can go on in the discharge of its duties until the litigation is ended, the only possible interest the public can have in the matter being that its revenues are protected during the litigation, and it is not only in the power, but is the positive duty of the courts to see that the public revenues are protected by sufficient bonds, as was done

in this case, and of these bonds no complaint has
been made.    Besides, there can be no protracted liti-
gation, as the law makes it the duty of courts to ad-
vance upon the dockets causes of this character with-
out regard to the time of filing.    In the case of the
contested election, so long as the contest lasts the
office is vacant, and during the time mischief and in-
convenience, suggested by Judge McKinney, might arise
and continue.    In that case no property in the office
had attached, the right to the office was the subject
matter of litigation.    Here the right to and property
in the office are not contested, nor even denied.    In
the Attorney-General case there was no attempt to
evict, but an effort to defeat an entrance.    Here the
purpose of the litigation is to evict an acknowledged
rightful tenant by virtue of election and induction.
Suppose, in the Attorney-General case, the officer had
been inducted into the office and taken upon himself
the discharge of its duties, and the proceedings had
been instituted against him to oust him from the
office, could it be holden that the action of the chan-
cellor, or of any inferior tribunal, would be final.
Take a case arising under our statutes making a mis-
demeanor (drunkenness for example) a forfeiture of the
office, could we hold the verdict and judgment of the
jury and inferior court final and conclusive against
the accused?    Certainly not.    The examples put and
the case at bar involve the questions of forfeiture of
office, the inconvenience and mischief to the public are
equal and the same.    I can see no substantial ground
of difference or distinction when we come to apply

the law. The public has certainly as much interest in being rid of a drunken judge or attorney-general as it can have in getting rid of a trustee whose bonds, to say the worst of them, are merely questionable as to sufficiency and solvency, and the argument of inconvenience applies with quite as much force. It is admitted that Knight is not without remedy if the judge has departed from the law in his action. That, as said by Judge McKinney in the Wade and Murray case, "in a case showing such a substantial departure from the course of proceeding prescribed in the statute as would render the proceedings void, the *certiorari* would be the proper remedy." And it is here now insisted that Knight's only remedy, if he had any, was by *certiorari* to the circuit court. To so hold we must determine that the circuit court is a superior tribunal to the circuit judge, and that an act officially performed by the circuit judge as such may be removed by the writ of *certiorari* from the circuit judge to the circuit court, presided over by the identical circuit judge whose act is complained of. In other words, that Hon. Frank T. Reid, circuit court, may revise the action and rulings of Hon. Frank T. Reid, Judge of the Circuit Court, both being done in an official capacity. This, to say the least of it, would be a curious anomaly in the machinery of judicature.

While, as above recited, Judge McKinney does say the *certiorari* would be the proper remedy, he must be understood as speaking in reference to the facts of the case he puts, and the jurisdiction of the court

arising upon these facts.    He cannot be understood as holding that to be the only remedy under all circumstances.    It is also admitted that if Judge Reed had, without doing more, refused to accept sufficient bonds when offered, he might have been compelled by mandamus.    If this be so, as it clearly is, why then, if the facts be as claimed, that his Honor the Circuit Judge not only refused to accept sufficient bonds, but went further and declared the office vacant, and certified to the appointing power, and thereby destroyed the utility of a mandamus, does the double error destroy all right to redress and cut Knight off from all means of correcting errors?    Certainly such things cannot be.    It must naturally and legitimately result that Knight, if at any time entitled to have the action of the circuit judge reviewed, is at all times entitled to such relief, and by means of such writ as will preserve his facts and present his case to the revising court.    If there is a revising jurisdiction in the case admitted, there must be a revisory jurisdiction in a case embracing the admitted one.    How can the distinction, as admitted, exist consistently with the theory of the exclusiveness and finality of the decision of the circuit judge?    If there be exceptions to the rule, on what do they rest?    When and how do they begin, and when and how do they cease?    If the jurisdiction of the special tribunal, as it is said to be, is conclusive in part it must be so in whole, if revisable in part it must be so in whole.    By what rule is a jurisdiction over a single case made divisible, conclusive in part and appealable in part.    Is there, in the

language of Judge McKinney, such a substantial departure from the proceeding prescribed by the statute as will render the proceedings void.

If we observe the injunctions of the statute the affirmative of the proposition is unquestionably true. The statute commands, "the requisition to give additional bonds shall in all cases be in writing, and signed by the officer making it; shall state the day and place, when and where the officer cited shall appear and give such bond, and copy thereof shall be served on such officer before the day specified therein." Such officer shall give the additional bonds within *ten days* after the day specified in such requisition, and failing so to do he vacates his office, and the officer making the requisition shall at once certify the fact to the appointing power, by whom the vacancy shall be filled."

The *first day of July* is the day and the *only* day specified in the requisition, and by the statute, as we have seen, Knight was entitled to ten days after the first, or until the 11th of July, to comply by giving additional bonds, if the court should determine he must give them. The statute giving the time is not merely directory, but is peremptory and positive, and leaves no room for any other construction than that indicated by its plain language. If, however, we could entertain a doubt upon the face of the requisition, the judge who wrote and signed it, and whose duty it was to do so, and construed it, has relieved us of all trouble. In his opinion in the case he says, "A requisition, signed by myself as judge of the circuit

court of this district, was made on said Knight to give additional bonds in the same penalty and conditions as the first official bonds, and naming the *first of the present month* (July) and the circuit court room as the day and place when and where said Knight should appear and give such bonds."

Instead of conforming to said statute and his requisition, Judge Reid decided the matter finally on the 5th of July instead of the 11th, and refused to take any further action in the matter, although, before the expiration of the ten days, Knight had offered bonds estimated by Judge Reid to be worth at least $250,000, an excess of $11,000 over the amount demanded by him, which was $242,000. The provision for time is an essential one in the statute, and it is only upon its observance the circuit judge is authorized to exercise the jurisdiction given by it. Its character demands for it a strict construction. So that whether the act to be done be either judicial or ministerial, if it do not pursue the statute conferring the jurisdiction it is void, and more especially so in cases of special and novel tribunals.

That the action of the circuit judge under the statute is judicial, it seems to me cannot admit of a doubt. The first thing he is called on to do when a case is presented is to construe the statute and determine his duties under it. This being so, and it being the rule that no appeal lies from his construction, we may have as many different constructions as there are circuit judges in the State, resulting in endless confusion, mischief, and inconvenience. We may

28—VOL. 3.

test the theory of the finality of the decision by this case. Suppose the circuit judge had concurred in the view of the attorneys of Knight that the act under which the motion was made was unconstitutional and void, would such holding have been conclusive, though the bonds may have been worthless? If so, the public would be without relief. Is it to result that the constitutionality of a law is to depend upon the diverse opinions of the several circuit judges in the State, and be imperative because held void in some circuits, and operative because held to be constitutional in others, and partially operative and partially not in others because so held by circuit judges? Or, being intended as the law of the land, must the authoritative construction come from the Supreme Court of the State? Again, if the circuit judge should hold bonds insufficient in substance, form and solvency, to be sufficient, there is no relief. His rulings are binding upon all courts upon the idea of finality. If it be answered that a court of chancery might relieve, the reply is, the action of the circuit judge constitutes a plea to the jurisdiction. If, however, this be waived, the action of the chancellor upon both law and facts is revisable in this court; or if a court of chancery is resorted to in the first instance, its jurisdiction is defeated by the law creating the special tribunal.

If the Legislature intended to make a ministerial agent merely, why select a circuit judge, who may have a dozen or more counties in his circuit? Is it to be infered that whenever a case arises under the statute he must, regardless of his term times elsewhere,

go to the county in which the trustee is to be required to give new bonds, or is he at liberty to wait till the time for holding his court in that county comes round? If the former, then one of the other eleven counties entitled to his presence may suffer because its business is permitted to remain untried upon its dockets. If the latter, then the argument of mischief and inconvenience from delay is suggested. The officer who is operating upon insufficient and insolvent bonds may hasten the collection of public revenue, pocket it and abscond. Instead of encountering such risks, if it be a mere ministerial agent who is wanted, why not select the sheriff of the county, the judge or chairman of the county court, or some other official of the county who is presumed to be better acquainted with the financial condition of the people of his county than a circuit judge living out of it can be? Or if these will not answer, why not provide by law for the election or appointment of such agent instead of distracting the duties and labors of a circuit judge?

Recurring to the statutes upon the subject, and construing them together, it seems to me there can be but little doubt of the judicial character of the duty imposed. In the first place, we see it is made the duty of the clerks of the county court to produce to the judge of the circuit court, for his examination, at the first circuit court in his county on the second day of the term after the first Monday in April in each year, the bonds, etc., for examination. That this must be done in term time is expressed by the statute. Then we have the provision for insufficiency be-

cause of the insolvency, death or removal of securi-
ties.   Then the provision in case of good reason to
fear the public interest may suffer for want of new
and additional security, and then the provision for ac-
tion upon the certificate of the grand jury, or a ma-
jority of them.   In this connection it is to be re-
membered that grand juries are never in session ex-
cept in term time; that at the time of the passage
of the act circuit courts had to organize grand juries,
and to give them these acts, or so much of them as
pertained to their duties, in charge.   Until a late period
no other courts had grand juries—there are but few
exceptions now.   Even since the passage of the law,
and after the organization of the criminal court for
Davidson county (and perhaps even now it is so), it
was the duty of the circuit court to organize and
charge the grand jury, and receive their returns, etc.

I know of no authority, and none has been fur-
nished, authorizing a grand jury to certify, as was
done in this case, to a judge of a criminal court
touching a matter over which he has no jurisdiction.
In all the cases provided for, inquiry must be made
by the circuit judge.   If by statute the judge can only
act in term time and while sitting as a circuit court,
it follows as of course on an extention of the duty in
the same matter, and over the same parties, and for the
same ends and purposes, and without an express change
of the time and manner of performing the enlarged
duty, that such duty must be performed in the same
way as is the duty first embraced, but subsequently
enlarged, and so requiring would imply on the part

of the Legislature a purpose to keep records of the proceedings.    When any of the matters embraced in the statute are brought to the attention of the court, the officer whose bonds are impugned must be summoned, this is nothing more nor less than an action against him to try the sufficiency and solvency of his bonds, by virtue of which he holds his office, and is entitled to its emoluments.    A case between him and the State and county exists to all intents and purposes, and both parties have the right to be heard upon all questions arising in the matter, and to confine and be confined to legal testimony, and to demand and have from the court proper and lawful rulings upon the same, as in other cases involving rights and property.    These rules have not been observed.    Illegal testimony was admitted and competent testimony was rejected.    "The law of the land" has not been administered.    It is nowhere provided in the law that the circuit judge shall have exclusive and final jurisdiction of the case.    There is nothing in the statutes beyond a conference of original jurisdiction.    The Constitution does not confer such power upon the Legislature.    The giving of such power must be alone by judicial construction, wholly unauthorized, as I think, by sec. 1 of article 6 of the Constitution of the State providing for a judiciary.

If special tribunals of conclusive jurisdiction may be created, the law creating them must be strictly construed, and nothing left to intendment.    Such laws are inovations of a well recognized, acknowledged, and cherished principle of our institutions, that a party

aggrieved because he has not had the judgment of the law pronounced upon the facts of his case, has the right to have such grievance redressed by the court of last resort in the State—a rule intended to prevent the evils that might come of the ignorance, willfulness or partizan conduct of courts composed of one man with conclusive power. It suppresses the temptation of bribery and the danger of corruption. There is no principle nor the slightest element of one in our system of government that authorizes or countenances the lodgment of arbitrary power in the breast of one man, no matter what his official relation to society may be. The entire genius and spirit of the government oppose it, and are at war with it. There is nothing to authorize the conclusion that the tenure of office or property is or can be dependent upon the will of one man, or a single official. Were it otherwise the ruin of the State might result from that state of high political excitement common to us. The combinations in the organization of the government make it conservative and preserve it. They are checks upon fraud and securities against fraudulent conspiracies between the individdal in office and outside influences.

FREEMAN, J., delivered the following dissenting opinion:

This is a proceeding had before the Hon. Frank T. Reid, Judge of the Circuit Court of Davidson county, in which the office of trustee, held by Knight, is declared vacant because of assumed failure of Knight to

give sufficient bonds as required by law, on the requisition of said Judge or court.

The following sections of the Code are necessary to be cited for properly understanding this case.

By section 725 of the Code: "The clerk of the County Court shall produce to the Judge of the Circuit Court for his examination, at the first Circuit Court in his county, *on the second* day of the term, after the first Monday in April in each year, the bonds of all county officers taken in such year by the County Court."

Section 726 is: If upon said examination said bonds shall, in the opinion of the Judge, have been taken according to law, he shall write upon them "examined and approved," and sign his name thereto. But if any such bonds shall not have been taken agreeably to law, the clerk of said Circuit Court shall issue subpœna instanter for such officer to appear before said Judge immediately, to enter into bond, with surety, according to law.

Section 727, provides for declaring the office vacant, if the person so notified fails or refuses to give the bonds, as required.

By section 777, and succeeding sections of the Code, it is provided, first, that it is the duty of the Governor to require new or additional bonds from the Comptroller, Treasurer and Secretary of State, when, in his opinion, the interest of the State demands it.

By section 778, and sub-sections, "All other public officers who are compelled to give official bonds, may

be required by the court or officer whose duty it is to take or approve such bonds, to give additional security, or new bonds, in the following cases:

1. When the security of the original bond has become insufficient, by the subsequent insolvency, death, or removal of the sureties thereto, or any of them.

2. Where there is good reason to fear the public interest may suffer for want of such new and additional security.

3. When the Grand Jury of the county, or a majority thereof, certify the insufficiency of the original bond.

The requisition to give the additional bonds is to be signed by the officer making it, and state the day and place when and where the officer cited shall appear and give such bond, and a copy is to be served on the officer before the day specified therein.

By section 780, such officer is to give the additional bond within ten days after the day specified in such requisition, and failing to do so, vacates his office, and the officer making the requisition shall at once certify the fact to the appointing power, by whom the vacancy shall be filled.

By section 5079, and sub-sections, it is made the duty of the Grand Jury to inquire into various matters of county administration, among others, into the condition of the county treasury, and the bonds of county officers with regard to their correctness and sufficiency, and into the misconduct in office of county officers.

The facts in this case are briefly as follows: The

motion was made on the 18th of June, 1879, in the
Circuit Court, to vacate the office of Knight, based
on the statement of a report of the Grand Jury made
to Judge Quarles of the Criminal Court, of the irreg-
ularity and insufficiency of his bonds as county trustee.
Subpœna was issued for Knight to appear on the next
day.

The Judge being sick, did no come into court until
the 20th, when Knight appeared, and, after some con-
test, an order was made and entered on the minutes
of the court, that "from an inspection of the four
bonds given by him," and the report of the Grand
Jury, said bonds were irregular and had not been taken
according to law, and that the amount of bonds was not
sufficient it was therefore ordered that Knight be
granted till the first of July to give new bonds, (the
amount of each bond being fixed), and if he fail to
do so, his office to be declared vacant. On the 28th
of June, Knight appeared by counsel, and took a bill
of exceptions, excepting in general terms to the read-
ing of the report of the Grand Jury, and then moved
the court to justify existing bonds, which was refused.

On the 1st of July he presented new bonds, with the
affidavits of parties to the same, before the court, spe-
cifying the amount and value of the property assumed
to be owned by the bondsmen, so as to show they
were probably good for the amount, on their own esti-
mate of the value of their property. The Judge seems
to have taken these bonds under advisement. And
while so advising, took the affidavits of various real
estate agents, as to their estimate of the value of said

property, and on this basis, reached the conclusion that the bondsmen lacked upwards of $37,000 of being worth as much as the sum required—and on the 5th of July he delivered an opinion, announcing this conclusion, with his reasons for it, and entered a final order vacating the office.

After this, perhaps on the 7th of July, an offer was made to increase the amount of the bonds, but this was refused, and a bill of exceptions (or which is claimed to be one), signed by the Judge—an appeal having been refused—and the case is now before us on writ of error and supersedeas, granted by one of the Judges of this court.

Two leading questions are presented on this statement.

First: Whether this proceeding is judicial in its character, and as such subject to review by this court by appeal or writ of error as a substitute for an appeal, or whether the action of the Circuit Judge is merely a matter of administration, in the nature of a special tribunal, assigned to the duty of accepting or rejecting these bonds, whose action is final, and from which no appeal lies, and as we understand it, no remedy whatever existent, by which the propriety of this action can be effectually tested.

This question is one of no little difficulty. The statutes conferring the authority have said nothing to enlighten us on this question. We are, therefore, compelled to arrive at our conclusion from the nature of the duties imposed, the tribunal to which it is assigned, and the general analogies of law, as found in our local jurisprudence.

On the part of those who maintain that this is not a judicial proceeding and no appeal lies, the argument from inconvenience and detriment to the public service, under a contrary practice, is pressed with much force, and made controlling in reaching the conclusion arrived at in support of the negative.

It is assumed the duties of the Circuit Judge, in a case like this, are the same in kind as that performed by the County Court, or a County Judge when one exists, in taking the bonds originally, and that in case the County Court or County Judge should refuse to accept bonds tendered by an officer for any cause, no appeal would lie, and probably no remedy exists whatever—at any rate, the remedy is not definitely pointed out. This is based on the confession that would or might grow out of a contest over such a question—the officer not being inducted into office until bond given, and the injury to the public service by having no officer to perform the functions of the office. While this is felt to be of great weight, and as applied to the question of induction into office originally, might or might not be controlling, the question is, is there not a difference between the case of an applicant to be inducted into office, and the one of an officer already in office, who is to be turned out of office by the proceeding? It might very plausibly be maintained, that in the first case, the tribunal appointed to take the bonds, being the county officials familiar with the citizens of the county, would be the fittest tribunals possible to determine on the solvency of the parties to such bonds, and that this question could

well be left to them, as it must be reposed somewhere. But the argument would entirely fail in almost every case in our State, where the Circuit Judges preside over from four to even as high as nine counties, and even in the two or three cases where he presides over but one county or part of a county, the nature of his office and duties renders it next to impossible he shall have any such peculiar knowledge.

But I think the distinction in the two cases is very well marked by this fact. In the one case, the County Court as the representative body, having control of the police and administration of the county, may and does properly decide on the solvency of the parties to all official bonds. In the case before us, an officer is in the possession and enjoyment of his office; it is a well-settled property right, one having emoluments of value, and having honors that in a republican government are sometimes deemed of equal or greater value. Is it the same thing precisely to be ousted from the enjoyment of these upon the arbitrary decree of a Circuit Judge, based on a mere inspection of his bonds, or his adjudication, not judicially made even, that the bonds tendered by him are insufficient? It seems to me there is enough of difference in the two cases, in connection with the difference in the tribunals, on which to base a distinction in favor of the right of revision in the latter case, even though denied in the first.

But let us turn for a moment to the other side of this question, and see if there are not arguments to be drawn from the same source of equal, if not

greater weight in favor of the idea, that this is a judicial proceeding, and as such to be conducted on legal investigation, and an improper or erroneous judgment subject to be corrected and revised, as in other cases.

First. I think there is no more of inconvenience or danger to the public interest in suspending the judgment of the Judge removing from office, than there would be in the common case of a contested election.

In the case of *Blackburn* v. *Vick*, 2 Heis., 381, this court held, that notwithstanding there was no statute providing either the mode or tribunal in which a revenue collector's election should be contested, that nevertheless, such a contest could be made before the County Court, and that from this decision an appeal lay to the Circuit Court, and then to this court. This conclusion was based on the fact that the county court was to induct the party *elected* into office and take his bonds, etc., and then on the further ground, that the right to be elected to the office involved the right "to assert, prove and maintain the right to the office." The court say: "If, however, another party may take the office, regardless of the question of who is elected, then unless his right can be contested and tried before the tribunals of the country, there is no remedy. He has a right, but no remedy for its infringement."

I think this reasoning sound, and its application to this case forcible. The party is in office—has a right to it by law—has been by the County Court regularly inducted into office, giving the bonds required

by that court. A grand jury, on an *ex parte* investigation, reports that these bonds are insufficient. If the theory maintained be true, then this or any other county officer may be turned out of office on this report, although his bonds tendered in response to this report may be perfectly solvent, all that the law requires in order to its enjoyment. I confess, that while conceding the force of the argument of *inconvenienti*, in this case, I have a more determined and inveterate objection to the exercise of irresponsible power, than I can ever find to the production of mere inconvenience in public administration. These inconveniencies in the warmth of argument will generally be more or less exaggerated, but in practice will be found to be much modified, and far less than an acute mind can show them to be, when pushing the results of a principle to its utmost limits, besides they can be readily remedied by legislative action

But the evils of irresponsible power by which a man's property, whether in an office or any other species of property, are so real and so far reaching, have so many consequences that cannot be foreseen, are so abhorrent to the genius of our government, and subversive of the enjoyment of rights by the citizen, that there can be but little exaggeration in this direction. Its exercise is everywhere felt to be the essence of tyranny, and not to be permitted in a free government. The axioms of liberty embodied in our Constitution, taken from *Magna Charter*, but express the universal sentiment of all free persons on this subject: "No man shall be taken or imprisoned, or

disseized of his freehold, liberties or privileges, or outlawed or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." I need not say that the law of the land does not mean either an arbitrary enactment of the Legislature, or an arbitrary judgment, without an investigation, or a right to be heard. This is all axiomatic in our jurisprudence.

The proceeding by which a man is deprived of a right of property, must be by due process of law, a trial, investigation and determination, after a hearing, in which the facts are presented—and this is a judicial proceeding, whatever its form may be or however informal.

In the case cited from 2 Heis., there was no provision of the statute for contesting the election of the particular officer then before the court. Yet we held that in such a case it was the duty of the court which was to induct into office, to try such contest and to prescribe the form of an issue that should be made up, so as to present the question to be decided, and if not made up in the County Court in the first instance, it was the duty of the Circuit Court, on appeal, to have such issues made, hear the evidence, and decide the question. In this we followed the case of *Boring* v. *Griffith*, 1 Heis., 456,—opinion by my Brother McFarland. In that case it was further held, that when the contest had been commenced, the right should be tried and contest determined, even after the one claimant had been inducted into office. This necessarily involves the result that such officer might

be turned out of office—but both cases hold it is a judicial proceeding, subject to appeal and revision. This is beyond dispute. Now if these cases be not overruled, then I cannot see how they can be distinguished in principle from the present case. The only element of difference is in favor of the right in this case, there being no question as to the party having been elected, and regularly inducted into office.

The one is a contest to assert a right to an office by election alone—the other is the assertion of the right, after induction into office. In the one case there is a claim that another is entitled to the office, and so there is an element of doubt as to the right of the contestant and the other claimant, as the case may be decided in favor of either the one or the other. In this there is no such element of doubt, no right of any one being possibly interfered with—only the defendant arbitrarily deprived of his office, with no remedy for the wrong.

It does seem to me, that if a party merely claiming the right to be inducted into office, is entitled to a trial and be heard before the courts of the country, before that right shall be determined against him, that much more shall he who already has the office, be entitled to the same measure of right before he can be deprived of his acknowledged and valuable property—certainly it devolves on those asserting the contrary, to distinguish between the two cases, or show at least a plain requirement of the Legislature in favor of the contrary view in a case like the present. To rely upon inference, and that, to say the least of it,

not very fairly drawn, as I think, cannot in my opinion be justifiable.

In addition, I may say, the action of the County Court as to induction into office, including of necessity the taking of the bond, was held in the above cases judicial action, and so the argument is, in some degree at least, real, that the County Court acts in the first place arbitrarily in the matter of induction into office, and on this assumption much of the argument of the majority opinion stands for its support.

Again, by the Constitution, bill of rights, sec. 17, " All courts shall be open, and every man for an injury done to him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered, without sale, denial or delay."

In view of these fundamental provisions, I feel bound to hold (unless the contrary is expressly declared), that all proceedings by which a party is to be deprived of his right are judicial, and therefore not arbitrary; and if judicial, then subject to revision and correction in the common course and ordinary mode in which such action is regulated or revised by this court.

It is a question in fact, where no rule is positively prescribed, as to whether we shall favor arbitrary or judicial action in a case involving a valuable right. On such a question, I cannot hesitate to decide in favor of judicial, rather than the rule of arbitrary will. This, I think, presents sharply the real issue. There is no mandate of the Legislature forbidding the infer-

29—VOL. 3.

ence that the action of the Circuit Judge is judicial in its character. All is to be inferred—all the weight of traditions of our jurisprudence, as well as requirements of our Constitution, are in favor of the construction that makes it judicial, and all these are against the opposite view.

Let us for a moment look at the nature of the duty to be performed, and the tribunal performing it. It is, that he shall be required to give new and sufficient bonds, where they are insufficient. The sufficiency of a bond to secure the revenue collected by such an officer, is a question of fact to be ascertained as other facts are ascertained, by testimony or other evidence appropriate to elicit the truth in the case. The investigation in this case involves in it no element different in essential features from any other investigation of the solvency of parties in our courts— such, for instance, as to whether a voluntary conveyance shall be held good by reason of the maker having retained sufficient property to meet his liabilities. If this be so, there is the nature of the thing to be done in favor of the view that what is to be done is a judicial act.

Assuming that it is a proper holding for the sake of the argument, that the Circuit Judge is the officer to act on the report of a grand jury, then the fact that the action is to be taken by a Judge, carries with it a strong inference, that his action is to be judicial action. This is controlling to my mind, unless the nature of the act to be performed repels this idea. We have seen it does not. This ought then to be

met by a mandate of the Legislature showing a contrary purpose. This is not to be found—and neither existing, I can see no escape on these grounds from the conclusion that the act is judicial.

But when we look at the *requirements* of the Code, this view is still stronger, as I think. Taking all the sections together, they may be summarized in about this: That where the bonds are not taken according to law, that is in the prescribed form or amounts, the party shall be summoned before the Judge immediately to give such bonds, and on *failure* to give them, the office is to be declared vacant. But suppose he does in fact tender them, does it not follow it is not vacant, and cannot be so declared? But if the action of the Judge is not judicial, and no appeal, then we are left to his unchecked will. But to proceed, on the report of the grand jury of the county or a majority of them, that the bonds are insufficient, then the party is to be cited to appear and *give* such bond as is sufficient. He shall give the bond within ten days after the day specified in the requisition, and failing, the office is to be declared vacant. His right is clear to remain in the office, if he gives the bond required by law. This fact, then, must be adjudged by the tribunal which is to take it. That tribunal being a judicial officer, on what principle we are to assume he is to act unjudicially (so to speak), when it is not said so, I am at a loss to see.

The reports of grand juries in every case, except three or four in our State where we have special

criminal courts, will be made directly (if this court has jurisdiction), to the Circuit Court during its session. It seems to me eminently proper, that whatever tribunal shall perform this duty, there should be a record made of so important a matter as the removal of an officer from his office. If the court acts judicially, this will always be done on the minutes of the court. If not, then no such record will exist, and a simple statement sent to the appointing power, will be all that shall evidence the vacation of the office by the officer chosen by the people, and the only warrant for filling the vacancy thus created. I confess this does not accord with a well-administered system of government in any view.

But another view presses itself upon us. Our officers of this character are filled by election of the voters of the county. This gives the right, under our Constitution and laws. The view which I am combating involves the proposition, and that to the fullest extent, that this election, and this right resulting from it, even after induction into office, may be all nullified and rendered of no effect, by the will of one man, and it may be, and in most cases will be, by a citizen of another county. The case need but be, of a report of a grand jury or seven of that body, of the insufficiency of the bond of an officer. He is required to give a sufficient one. He tenders one amply good, as the law requires, but the Judge says, I refuse to accept the bond tendered, and he goes out of office. No reason need be assigned, no record is to be kept. The only writing is the notification **to**

the appointing power.  Is there no remedy for this, no check on such action?  On the theory maintained, I see none.

If you say a *mandamus* would lie to compel a Judge to do his duty, as a ministerial officer, then does not the same inconvenience occur, as in the case under the view I have contended for, or may not the confession be worse?  For if the right to a *mandamus* is conceded, then it may be successful, and then you have the question as to who was entitled to the office and its perquisites during the time of the contest, to settle, whether an appointee, as on a vacancy that did not in fact exist, or the officer having the right. Whether the office could be held vacant and filled during the pendency of the proceeding to compel the acceptance of the bonds, I need not determine.  Be that as it may, there is difficulty enough in the case.

This being so, I think the argument from inconvenience is sufficiently met, and certainly the only fair construction is, that there is no remedy, or none that is effective, which is the same thing.  And that brings us to the simple question, whether the Legislature has the power to authorize a party to be deprived of his office arbitrarily, at the will of any man or tribunal, with no remedy in case his right is infringed.  To this I but answer in the language of the bill of rights already quoted: "No man shall be disseized of his freehold, liberties or privileges, or outlawed or exiled, or in any manner destroyed, or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

If an emergency or public exigency can create an exception in the case of the right to an office, it may equally do so in the case of imprisonment, of disseizin of his freehold, or exile, or even his life. I see no place where the line can be drawn which shall say, so far you may go, and no further, and therefore I shrink from the first step, as I would from all that might follow.

I see no great practical inconvenience to follow from this view. The bonds taken by the County Court or Judge, will in most cases be good, or approximately so. In most cases the officer, when required, will tender good ones, and the Judge accept them. The county will have the original security of the first bonds for their protection, and the new bonds tendered, if accepted at last at the end of the contest, to cover all liabilities, and this will be ample. When a contest is pending, the officer will be likely to be careful in the performance of official duties, besides be watched by interested sureties. So that all the probabilities are in favor of a faithful performance of duties during the period. Besides, there is the supervision of a grand jury every four months, together with the general supervisory power of the County Court or County Judge. The influences and checks may better be trusted to, I think, than to permit any man arbitrarily to exercise the function of depriving an officer of his right to his office, its honors and emoluments. The public interest, I think, cannot seriously suffer during the trial of the question of the sufficiency of his bonds. Constitutional liberty must

always receive a shock, when arbitrary power is exercised to the injury of the right of the citizen. I do not feel at liberty to measure the extent to which this may reach. It is sufficient to know it is the exercise of arbitrary power, to say, it might not, it cannot be, under our Constitution of government. Conceding, but not admitting, for the sake of argument, that the fair construction of the provision of the Code is, that the Legislature intended to give the Circuit Judge, · individually, but not as a Judge, nor judicially, the power to decide upon the right of an officer to continue in his office, and to deprive him of that right, and that this decision should be made practically at his will, and be final, not subject to appeal or revision, I do not think the case is helped in the least. The Legislature can no more deprive a man of his rights by authorizing another man to deprive him of them, than it can do so by a direct enactment to that effect. What it cannot do arbitrarily, it cannot authorize to be done in the same way. This certainly does not need authority to sustain it.

If admitted, then the fact that Frank T. Reid, as a special tribunal, not bound by the forms of law, nor acting as a judicial tribunal, has said that the trustee of Davidson county shall be deprived of his office, can have no more force, than if the Legislature had said it, and that would have none whatever. In short, I deny the power of the Legislature to confer the power on any man, or body of men, to deprive a citizen of any property or right whatever. This can only be done by authorized judicial tribunals, acting

through the established forms of law, after due inves-
tigation according to such forms, in other words, by
the law of the land, or the judgment of his peers.
It certainly never can be maintained, that while a man
cannot be deprived of the right to a horse or cow
by the arbitrary enactment of a Legislature, either
directly or indirectly by authorizing another to declare
it forfeited, yet that an office to which he has been
legally elected, and which he then holds, shall be taken
from him arbitrarily without remedy, that may yield
an income of five thousand dollars, enough to pur-
chase fifty horses or cows or more. Yet this is the
result of the theory of the majority opinion, as I un-
derstand it. All this too is sustained, not by the
express language of the Legislature, but from the in-
fluence solely of the argument *ab inconvenienti*, and danger
of public inconvenience. Conceding the just weight due
the argument from this source, it can never rightly be
as the dust in the balance, as compared with the evils
incident to the exercise of arbitrary power, to deprive
a citizen of a valuable right.

The truth is, that supposed demand of sudden ex-
igencies can never be made a sound basis for general
rules of law or right. Decisions made to meet such
cases will always be found incongruous, and impossible
to be fitted into our general system, the leading idea
of which is, that all rights are to be determined by
the regularly established exponents of the law of the
land, acting under the responsibilities of judicial posi-
tion, with its wholesome legal and traditional restraints
and limitations. After careful thought, however, I

conclude the Circuit Judge has no jurisdiction, either as a court or as a special tribunal, over the question of the bonds of the county officers, except in the case specified in section 725, where the clerk of the County Court produces the bonds of all county officers, at the first Circuit Court in his county, on the second day of the term, after the first Monday in April in each year. In this case I think the court acts judicially. He is to act at the first Circuit Court and on the 2d day of the term, thus implying it is a part of the business of the court during that term, and he is to decide on the validity, as a matter of law, of the bonds. This is a legal question, placed under the jurisdiction of the Circuit Court, of which it takes cognizance at the specified term every year.

But let us turn to the provisions of section 778 and sub-sections, that all public officers who are compelled to give official bonds, may be required by the court, or officer whose duty it is to "take or approve such bonds, to give additional surety or new bonds in the following cases:

1. Where the security in the original bond has become insufficient, by the subsequent insolvency, death or removal of the sureties thereto, or any of them.

Now it is clear that this case is not referred to the Circuit Court or Circuit Judge, for he as such cannot be made cognizant of the facts, living, as he does in most cases, out of the county, (he can but reside in one), he has not the means of knowledge of the facts specified on which the new bonds are to be taken, and no mode of bringing the facts to his at-

tention is provided.    The duty is an appropriate one
to the chairman of the County Court, or that court,
or the County Judge, where there is one, and we
take it that this would be conceded, that in the case
under this sub-section, the court or officer approving
or taking the bonds in the first instance, is the one
to require the new bonds.

The second sub-section is, where there is good rea-
son to believe the public interest may suffer for want
of such new and additional bond.    Certainly it would
not be claimed that so general a duty as looking after
the public interest of a county, and of each county
in his circuit, in reference to official bonds, was in-
tended to be imposed on a Circuit Judge, and that
to the exclusion of the County Court or chairman, the
body having general supervision of county administra-
tion.    The fact that some of these Judges have as
many as nine counties in their circuits, and all as
many as four, except three or four, would preclude
this conclusion.    The fact, too, that this is a matter
of county administration, which belongs under our sys-
tem peculiarly to the County Court or County Judge,
would render this absolutely certain, unless the Leg-
islature had, in terms unmistakable, so expressed its
will.    This has not been done.

Then follows the third sub-section—when the grand
jury of the county, or a majority of them, certify the
insufficiency of the original bond.

To sustain the jurisdiction of the Circuit Court, it
must be shown, that in this last case the duty of
taking the new bond is to be performed by a differ-

ent official or tribunal, from the one to which the cases in the first and second sub-sections are referred. But the section 778 expressly fixes the duty in each case on the same court or officer, that is, "*the court or officer, whose duty it is to take or approve such bonds;*" that is, as I construe it, in the first instance, as the regularly established official or officers, whose ordinary duty by law is to take these bonds. It would but be natural, that the same tribunal that took or approved originally, should be charged with the duty of seeing that the bonds taken should continue equal to the end for which they were designed, and this whether the knowledge of the need of new bonds should come to the officials charged with the duty, from observation, or by the report of the grand inquest of the county. The language of the sections defining the duties of the Circuit Judge, section 725, and that of 778 and 779, tends to aid this view. In the first case, it is that the clerk shall present the bonds to the "Judge of the Circuit Court"—the "Judge shall examine," and the officer is to be summoned to appear before "said Judge." In this case, however, 779, the requisition to give the additional bonds shall in all cases be signed by the officer making it—not the Judge. The *officer* making the requisition shall certify to the appointing power, etc. If the same officer was intended, to-wit, the Circuit Judge, it is strange that in the one case it is so said, and in the other left under the indefinite designation, officer. This, however, may well apply to the Chairman of the County Court or a County Judge

But section 426*a* of the Code, (act of 1868-9, ch. 41), it seems to me, makes this view still stronger as to the county trustee. It provides: "It shall be the duty of the County Courts, or board of commissioners in this State, to examine into the solvency of the county trustee's bonds, and if found to be insufficient, as provided by law, it shall be the duty of the court to notify him of the fact, and require him to give new additional security in such sums as may be fixed upon by the court, sufficient in their judgment to cover the revenue of the county, and if the bond or security be not given on or before the ensuing term of the court, then it shall be the duty of said court to declare the office vacant, and to elect or appoint his successor, who shall be required to give bond," etc.

This section, fairly construed, would seem to impose the duty of examination into the sufficiency of this bond on the County Court, and manifest the legislative intent to be, that this body was the body charged with the supervision of this branch of county administration. The County Judge or chairman of the County Court, by section 421, is made the accounting officer, and general agent of the county. As such general agent, the County Judge and chairman is the officer to whom the report of the grand jury should be made, and who is to make the requisition to give the additional bonds in the first two cases provided for in the sub-sections; and if so, it seems to me, it fellows inevitably that the same duty is to be performed by the same officer in the latter case. Certainly no reason is found for the duty being imposed

on the Circuit Judge, and all the analogies of our system of administration require it to be performed by the County Judge or chairman, as the general agent of the county. Why take it from the general agent of the county, and give it to an irresponsible individual, who is Circuit Judge—not to that court?

This act of 1868, requires the performance of the precise duty that has been performed here, to be performed by the County Court. Why may this court not as well look after and examine into the solvency of the bonds of the trustee, on the report of the grand jury, as the Circuit Judge? We see no reason against this practice. This statute has but to be held to modify the former statute, as to the time to be given, and give the jurisdiction directly to the County Court in the case of county trustee, and you have the whole system of county administration in harmony, and confided where it ought to be, to responsible representatives of the county, familiar with the question on which it is to act.

For these and other reasons, I am for reversing the action of the Circuit Judge in this case.